

3/23/21

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

| IN RE: | CASE NO. 2:19-bk-20450 |
|---|---|
| WILLIAM WARREN MUCKLOW, | CHAPTER 7 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |
| GENA L. ELLIOT, | ADVERSARY PROCEEDING NO. 2:20-ap-02001 |
| Plaintiff, | |
| v. | |
| WILLIAM WARREN MUCKLOW, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment (the "MSJ") [dckt. 13] filed by the plaintiff, Gena Elliot, in her adversary proceeding against the debtor-defendant, William Mucklow, on June 12, 2020. Mr. Mucklow filed his Memorandum in Opposition [dckt. 16] on June 22, 2020. Ms. Elliot filed a Reply [dckt. 17] on June 29, 2020. Ms. Elliot contends that a debt of unpaid wages owed to her by Mr. Mucklow, to which she is entitled by way of a state court judgment, is nondischargeable under 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(6). At issue is whether the evidence provided by both parties entitles Ms. Elliot to judgment as a matter of law under Federal Rule of Civil Procedure 56, as applied to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. After reviewing all of the pertinent pleadings, briefs, and exhibits, this Court finds that Ms. Elliot is not entitled to summary judgment.

I.

A. **Factual and Procedural Background**

New Beginnings Drug Treatment Center, Inc. ("New Beginnings") is a West Virginia corporation that was previously engaged in the business of providing treatment for opiate addiction. Mr. Mucklow is President of New Beginnings.

On or around May 2017, Gena Elliot was hired by New Beginnings as an office manager. She was compensated in the amount of $10.00 per hour. Ms. Elliot worked for New Beginnings from May 12, 2017, through December 31, 2017, during which time she amassed a total of 335.87 work hours. Ms. Elliot alleges that her work should have yielded a gross pay of $3,358.70, but she only received $2,487.50, leaving a deficiency of $1,500.00 [dckt. 1, p. 3, ¶ 14].[1]

Ms. Elliot filed a lawsuit against both New Beginnings and Mr. Mucklow in his individual capacity in the Circuit Court of Kanawha County on February 8, 2019.[2] Her complaint asserted violation of the West Virginia Wage Payment and Collection Act ("WPCA"), *Quantum Meruit*, Breach of Contract, Promissory Estoppel and Unjust Enrichment, Piercing the Corporate Veil, and Fraud in the Inducement [dckt. 13, Exh. A]. On April 15, 2019, default judgment was entered in favor of Ms. Elliot in the amount of $3,000.00. The default judgment states that "Judgment shall be entered against Defendant William Mucklow herein in the sum certain amount of $3,000 " [dckt. 13, Exh. B, p. 2]. [3]

---

[1] The Court has made this calculation and finds that the actual difference is $871.37. However, in Ms. Elliot's pleadings in this Court and in the Kanawha County Circuit Court, she asserts that she is owed the amount of $1,500.
[2] C.A. No. 19-C-125.
[3] The WPCA states that, in calculating damages, the amount of the unpaid wages is doubled. W. Va. Code § 21-5-4(e). This is why the "sum certain" is $3,000.00 instead of $1,500.00.

Following entry of the Judgment Order, Ms. Elliot was issued a Writ of Execution [dckt. 13, Exh. C], upon which she sought to execute. In attempting to recover the judgment, Ms. Elliot's counsel issued a Subpoena *Duces Tecum* for Mr. Mucklow to appear for a Deposition on July 2, 2019 [dckt. 13, p. 2]. Mr. Mucklow failed to appear, so Ms. Elliot filed a Motion for Contempt and Rule Order to Show Cause. A hearing on this matter was held before the Circuit Court of Kanawha County on September 18, 2019. Mr. Mucklow failed to appear at this hearing, which prompted the court to enter an Order Appointing Discovery Commissioner in Aid of Execution [dckt. 13, Exh. D] and a Summons for Interrogatory in Aid of Execution [dckt. 13, Exh. E]. The Special Commissioner appointed by the court's Order was to conduct an inquiry in aid of execution. On December 19, 2019, the Special Commissioner filed a Report [dckt. 13, Exh. F] with the state court reflecting that Mr. Mucklow failed to appear on the designated date and time for the hearing on the inquiry in aid of execution. Mr. Mucklow was subsequently found in contempt, and the court ordered the Sheriff of Kanawha County to arrest and detain him so he could be made to appear before the Special Commissioner [dckt. 13, Exh. G]. Pursuant to the court's Order, Mr. Mucklow was booked into the South-Central Regional Jail on December 4, 2019 [dckt. 13, Exh. H].

On December 6, 2019, the Special Commissioner took a deposition of Mr. Mucklow in connection with Ms. Elliot's civil case in the Circuit Court of Kanawha County [dckt. 13, Exh. I]. In this deposition, Mr. Mucklow asserted that Ms. Elliot was compensated in full for the hours she worked [dckt. 13, Exh. I, p. 43, lines 15-17]. He claimed that she was paid by another company he owns, Public Benefits Company [dckt. 13, Exh. I, p. 44, lines 18-19].

In the meantime, on October 10, 2019, William Mucklow filed for bankruptcy protection under Chapter 7 of Title 11 of the United States Code, which stayed the collection efforts of Ms.

Elliot on her judgment. Notably, in his schedules, Mr. Mucklow listed his personal indebtedness to Ms. Elliot, although disputed, in the amount of $3,000.00. Ms. Elliot filed the above-captioned adversary proceeding on January 10, 2020.

B.   **Summary of Arguments**

In her Motion, Ms. Elliot contends that she is entitled to summary judgment because: (1) the Full Faith and Credit Act mandates validating the Judgment in her favor; and (2) Mr. Mucklow's conduct meets the requirements for a determination of non-dischargeability under both subsections 11 U.S.C. § 523(a)(2) and (6). With respect to § 523(a)(6), Ms. Elliot asserts that, because the default judgment she obtained in state court was for violating the WVCPA, Mr. Mucklow's conduct goes beyond simply breaching a contract.

In his Response, Mr. Mucklow contends that: (1) the indebtedness involved in this case – a judgment for unpaid wages – is the type of indebtedness that is typically discharged in bankruptcy cases; and (2) that the Full Faith and Credit Act and the doctrine of *res judicata* are inapplicable because the indebtedness is not being relitigated. Mr. Mucklow argues that the underlying adversary proceeding, here, simply deals with whether the debt is dischargeable in Bankruptcy Court.

In Ms. Elliot's Reply, she argues that Mr. Mucklow incorrectly stated her position in his Response. Ms. Elliot contends that her claim was decided in the state court proceedings on the merits by way of a Default Judgment and the state court decision should be given preclusive effect.

## II.

**A.       Legal Standards**

### *Summary Judgment*

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bank. P. 7056. The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must do so by offering "sufficient proof[ ] in the form of admissible evidence" rather than relying solely on the allegations of his complaint. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S. Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (internal quotation omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 (advisory committee's note to 1963 amendment).

### *Res judicata*

The doctrine of *res judicata*, or claim preclusion, prohibits re-litigation of "further claims by parties or their privies based on the same cause of action" if a final decision has already been rendered. *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (*quoting Montana v. United States*, 440 U.S. 147 (1979)). The Supreme Court has held, however, that *res judicata* is inapplicable in the

bankruptcy nondischargeability context. *Felsen*, 442 U.S. at 139-39 ("[A] bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt.").

### *Collateral Estoppel*

Collateral estoppel or "issue preclusion" prohibits relitigation of matters already adjudicated by a valid and final order of another court. *Sartin v. Macik*, 535 F.3d 284, 287-88 (4th Cir. 2008). The Full Faith and Credit Act, codified in 28 U.S.C. § 1738, mandates that federal courts give the same full faith and credit to state court judgments "as they have by law or usage in the courts of such State . . . from which they are taken." "A federal court must first look to state law to determine the preclusive effect of the state court judgment. 'If state law would not bar relitigation of an issue or claim decided in the earlier proceeding, then the inquiry ends.'" *In re Gilson*, 250 B.R. 226, 241 n.4 (Bankr. E.D. Va. 2000) (*quoting In re Genesys Data Technologies, Inc.,* 204 F.3d 124 (4th Cir. 2000)). This means that bankruptcy courts must apply the standards set out by the rendering state court when determining whether issue preclusion applies. Here, the judgment was from a West Virginia state court. The Supreme Court of Appeals of West Virginia has applied the following test for determining whether collateral estoppel bars an issue:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Syl. Pt. 1, State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114, 117 (1991). However, "[r]elitigation of an issue is not precluded when a new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in two courts." *Syl. Pt. 2, Id.* The

Supreme Court of Appeals goes on to state, "Where the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims, a compelling reason exists not to apply collateral estoppel." *Id.* Finally, "[f]or purposes of issue preclusion, issues and procedures are not identical or similar if the second action involves application of a different legal standard or substantially different procedural rules, even though the factual settings of both suits may be the same." *Syl. Pt. 3, Id.*

### *Section 523(a)(2)*

Section 523(a)(2)(A) exempts from discharge debts incurred through "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Under § 523(a)(2)(A), the false representations giving rise to the debt must have been knowingly and fraudulently made, or, in other words, the conduct in question must have involved "moral turpitude or intentional wrong." *In re Reecher*, 514 B.R. 136, 158 (Bankr. D. Md. 2014) ("In the context of nondischargeability, however, exceptions to discharge for fraud require 'positive fraud, or fraud in fact, involving moral turpitude or intentional wrong . . . and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.'") (*quoting Neal v. Clark*, 95 U.S. 704, 709 (interpreting the Bankruptcy Act of 1867 predecessor section to § 523(a)(4)). Not only must the fraud be knowingly, but the opposing party must have justifiably relied on the false representation. *Field v. Mans,* 516 U.S. 59, 70 (1995).

Thus, to prevail under § 523(a)(2)(A), Ms. Elliot must show by a preponderance of the evidence that Mr. Mucklow: (1) made a false representation; (2) knew that the representation was false; (3) intended to deceive; (4) produced the victim's justifiable reliance on the representation; and (5) proximately caused damage. *SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 334 (4th

7

Cir. 2013); *Boyuka v. White (In re White)*, 128 Fed. Appx. 994, 998 (4th Cir. 2005) (*citing Grogan*, 498 U.S. at 286).

### *Section 523(a)(6)*

Section 523(a)(6) exempts from dischargeability debts incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Any movant under section 523(a)(6) must prove three elements by a preponderance of the evidence: "(1) the debtor caused an injury; (2) the debtor's action were willful; and (3) the debtor's actions were malicious." *Ocean Equity Group, Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 128 (Bankr. E.D. Va. 2010); *In re Raeder,* 409 B.R. 373, 383 (Bankr. N.D. W. Va. 2009). A finding of nondischargeability requires more than "negligent, grossly negligent, or reckless conduct." *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 729 (4th Cir. 2006). "Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable." *In re Raedar* at 383 (*citing Kawaauhau v. Geiger,* 523 U.S. 57, 60 (1998)).

"Willful" requires deliberate or intentional acts, while "malicious" refers to acts that are "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *Nestorio v. Associates Commer. Corp. (In re Nestorio)*, 250 B.R. 50, 57 (D. Md. 2000) (*quoting St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir. 1985)). A debtor's "subjective mind set is central to the inquiry as to whether debtor acted deliberately in knowing disregard of a creditor's rights in property," in terms of the willfulness inquiry, and for the maliciousness requirement, a "plaintiff creditor can even establish malice on an implied basis from a showing of debtor's behavior, as well as a

presentation of the surrounding circumstances." *In re Davis,* 262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001) (*citing St. Paul Fire & Marine Ins. Co. v. Vaughn* at 1010).

**B.    Analysis**

*Res judicata* does not preclude Mr. Mucklow's defenses to dischargeability. The Supreme Court clarified in *Felson* that whether a claim is dischargeable in bankruptcy is a distinct legal inquiry from whether a debt is owed in the first place and cannot be precluded by the *res judicata* doctrine. Therefore, Ms. Elliot's state court judgment does not prevent this Court from litigating the dischargeability of any debt she is owed.

It is unclear from the plaintiff's Motion for Summary Judgment which issue(s) might be precluded by the doctrine of collateral estoppel. Although the Motion contains a recitation of West Virginia's requirements for issue preclusion, it does not specify if, where, or how the doctrine should be applied in the instant matter. This Court will have to assume, due to the vagueness of the MSJ, that Ms. Elliot is attempting to argue that the findings by the state court are sufficient to preclude this Court from undertaking its own inquiry regarding whether Mr. Mucklow's actions have met the standards for non-dischargeability under §§ 523(a)(2) and (a)(6). To reach that level, the state court must have made findings on the merits that are specific enough to evidence either Mr. Mucklow's knowing and fraudulent conduct, or his willful and malicious actions. This Court believes that a new determination is warranted because the quality and extensiveness of the Circuit Court of Kanawha County's default judgment order were insufficient to meet the standard for application of collateral estoppel. Neither the underlying factual issues of this case nor damages were actually litigated, and, while this Court does not condone defendants failing to appear in a legal proceeding when they have been properly served, it cannot preclude the issue of dischargeability based solely on the Kanawha County Court's default judgment in this case.

As for the appropriateness of summary judgment in and of itself, the information offered thus far presents disputes of material fact that prevent judgment as a matter of law. The parties have offered competing evidence with regard to Mr. Mucklow's "subjective mindset." *See Davis*, 262 B.R. at 670-71 ("Debtor's subjective mindset is central to the inquiry as to whether debtor acted deliberately in knowing disregard of a creditor's rights in property."). The state court deposition taken in December 2019 leaves many questions unanswered as to Mr. Mucklow's intentions when he failed to pay his employees their full wages; questions that likely require the judgment of a factfinder at trial. Thus, the Court does not have sufficient circumstantial evidence at this time to arrive at the conclusion that Mr. Mucklow acted willfully and maliciously or that he acted with "actual intent to cause injury." In addition, the exhibits provided by Ms. Elliot do not satisfy all of the elements required by this Court for a showing of nondischargeability under either § 523(a)(2) or § 523(a)(6).

### III.

**A.     Conclusion**

Because genuine issues of material fact remain for the factfinder in this case, and because *collateral estoppel* is not proper in this matter, summary judgment is not appropriate. Accordingly,

**IT IS ORDERED** that Ms. Elliot's Motion for Summary Judgment be, and is hereby, **DENIED WITHOUT PREJUDICE.**